Argued and submitted September 23, 1994, reversed and remanded July 3, petition for review denied October 22, 1996 (324 Or 322)

## J. Dianne HARRIS,
### *Appellant,*

*v.*

## Eldon J. SANDERS
## and Elsie V. Sanders,
## dba Blue Garden Restaurant;
## and George Dreiszus and Mabel Dreiszus,
### *Respondents.*

### (92P1107; CA A81832)

919 P2d 512

J. Randolph Pickett argued the cause and filed the briefs for appellant.

James C. Edmonds argued the cause for respondents Eldon J. Sanders and Elsie V. Sanders, dba Blue Garden Restaurant. With him on the brief were Steven M. Lippold and Clark, Lindauer, McClinton, Fetherston, Edmonds & Lippold.

Bruce W. Williams argued the cause and filed the brief for respondents George Dreiszus and Mabel Dreiszus.

Before Richardson, Chief Judge, and De Muniz and Leeson, Judges.

LEESON, J.

Richardson, C. J., dissenting.

## LEESON, J.

■■　Plaintiff appeals from a directed verdict for defendants on her claim that defendants were negligent *per se*,[1] because they violated a Dallas city ordinance. The trial court ruled that, as a matter of law, the ordinance does not impose a duty on abutting landowners to remove leaves from sidewalks. We reverse and remand.

Plaintiff seriously injured her ankle when she slipped and fell on a public sidewalk in Dallas. Defendants Sanders own the Blue Garden Restaurant that abuts the sidewalk. Defendants Dreiszus own the commercial property next door that also abuts the sidewalk. Plaintiff fell when she was walking on the sidewalk in front of either or both of defendants' properties. She testified that she slipped on wet leaves that had been allowed to accumulate on the sidewalk underneath a tree that was located on city property along the public sidewalk in front of defendants' properties.

Plaintiff's theory of liability is that Dallas City Code (DCC) section 5.564 imposes liability on abutting landowners who "fail to maintain the sidewalks free from leaves." Defendants moved for a directed verdict on the ground that DCC 5.564(3) is an ordinance about "snow and ice removal and defective sidewalks [and] says absolutely nothing about leaves." Plaintiff opposed the motion, contending that the court could not say that, as a matter of law, the phrase, "other

---

[1] Plaintiff's claim is more properly characterized as "statutory liability." Negligence *per se* refers to a standard of care that the law imposes within a cause of action for negligence. *Gattman v. Favro*, 306 Or 11, 15 n 3, 757 P2d 402 (1988). Under that theory, a plaintiff may invoke a statute or other governmental rule to supply the standard of care that the tortfeasor is expected to have met, even though the statute or rule neither expressly nor impliedly gives a person injured by its violation any claim for damages. *Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985). In contrast, statutory liability arises as a legal right created by statute, without regard to the elements of a common-law negligence action. *Gattman*, 306 Or at 15. Any issue of foreseeability is either immaterial or has already been determined by the legislative body that created the right. *Id.* Statutory liability is imposed if the plaintiff can show that the injury suffered resulted from violation of the statute, and that the plaintiff is among the group that the statute was intended to protect. *Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988). In this case, the dispute requires a determination of whether defendants violated a Dallas city ordinance.

similar conditions," does not encompass the situation in this case.

DCC 5.564 provides:

"(1) No owner or person in charge of property, improved or unimproved, abutting on a public sidewalk, shall permit:

"(a) Snow to remain on the sidewalk for a period longer than the first two hours of daylight after the snow has fallen.

"(b) Ice to remain on the sidewalk for more than two hours of daylight after the ice has formed, unless the ice is covered with sand, ashes or other suitable material to assure safe travel.

"(2) No owner of property, improved or unimproved, abutting on a public sidewalk, shall permit the sidewalk to deteriorate to such a condition that, because of cracks, chipping, weeds, settling, covering by dirt, or other similar occurrences, the sidewalk becomes a hazard to persons using it.

"(3) The city shall not be liable to any person for loss or injury to a person or property suffered or sustained by reason of any accident on sidewalks caused by *ice, snow, encumbrances, obstructions, cracks, chipping, weeds, settling, holes covered by dirt, or other similar conditions. Owners of abutting property shall maintain sidewalks free from such conditions* and are liable for any and all injuries to persons or property arising as a result of their failure to so maintain the sidewalks." (Emphasis supplied.)

The trial court ruled that, as a matter of law, leaves cannot constitute "other similar conditions" for purposes of establishing liability under the ordinance. It granted defendants' motion for a directed verdict and entered judgment for defendants. In assigning error to that ruling, plaintiff contends that an accumulation of leaves *can* constitute one of the "other similar conditions" encompassed by DCC 5.564(3). Defendants respond that the ordinance does not impose on abutting landowners a duty to remove leaves that have fallen on public sidewalks.

■■ Whether the liability imposed by DCC 5.564(3) can include a duty for abutting landowners to maintain sidewalks free from leaves is a question of legislative intent. We apply to municipal ordinances the same rules that govern the construction of statutes. *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 157, 364 P2d 627 (1961). We first examine the text of the ordinance in context, giving the words their plain, natural and ordinary meanings. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

■ DCC 5.564(3) requires abutting landowners to keep sidewalks free from "ice, snow, encumbrances, obstructions, cracks, chipping, weeds, settling, holes covered by dirt, or other similar conditions." The term "other similar conditions" reflects the city's intent not to limit the ordinance to the conditions specifically enumerated.

The trial court reasoned that, because "the existence of leaves on a sidewalk in Oregon is something that is quite commonly known," it is significant that leaves are not specifically mentioned in DCC 5.564. According to the court, the condition in the ordinance most analogous to an accumulation of leaves "is probably the word encumbrances." Relying on the definition of the term "encumbrance" in *Black's Law Dictionary* 908 (4th ed 1968),[2] it concluded as a matter of law that leaves cannot constitute an encumbrance and that therefore they cannot qualify as one of the "other similar conditions" specified in DCC 5.654. However, unlike the legal definition, the ordinary meaning of encumbrance is "to encumber," which in turn means "to impede or hamper the natural or requisite function or activity [of something]." *Webster's Third New Int'l Dictionary* 747 (unabridged ed 1976). The function of a sidewalk is to allow passage by pedestrians and others permitted to use it. The obvious intent of DCC 5.564 is to assure safe sidewalk conditions. DCC 5.564(3) unquestionably imposes liability on abutting landowners for failure to remove encumbrances. It was error for the trial

---

[2] For the term "encumbrance," *Black's Law Dictionary* instructs the reader to "See Incumbrance" and defines that term as "Any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee." The context of DCC 5.564 makes it clear that the legal definition of encumbrance is not the definition contemplated by the drafters of the ordinance.

court to conclude as a matter of law that leaves cannot constitute an encumbrance or another condition similar to an encumbrance.

The trial court's analysis also implicitly assumes that the phrase "other similar conditions" in DCC 5.564(3) includes only conditions analogous to or derivative of one of the enumerated conditions. Inclusion of "other similar conditions" reflects the city's intent *not* to limit DCC 5.564 to the specifically enumerated conditions. In the context in which it appears, "other similar conditions" refers to conditions that have the same effects as those enumerated.

It is true, as defendants argue, that DCC 5.564(1) specifically addresses only ice and snow. However, the reasons that ice and snow need to be removed from sidewalks are that they are slippery and can conceal other conditions that are capable of causing harm to users of sidewalks. DCC 5.564(2) lists a variety of conditions that constitute a deterioration of a sidewalk, in that they impair its condition, impeding its use for the intended purpose. *See Webster's* at 616 ("deteriorate" means to become impaired in quality, state or condition). They are similar to ice and snow in that they can create hazards for sidewalk users. DCC 5.564(3) imposes liability on abutting landowners for the conditions listed in subsections (1) and (2), along with encumbrances, obstructions and "other similar conditions." An accumulation of wet leaves can be slippery and can mask other dangers. As a matter of law, an accumulation of leaves can be one of the "other similar conditions" for which the ordinance imposes duties and liabilities on abutting landowners.

Plaintiff testified that, as she approached the Blue Garden Restaurant, she noticed water running off the sign on the outside of the building and altered her course slightly to avoid the water. She slipped and fell in the vicinity of a tree "that had a little cement cut out." She further testified that the leaves on which she fell were brown, wet and "mushy-like" and "had been there for awhile." Plaintiff was entitled to have the jury determine whether, on the facts presented in this case, the leaves on which she slipped constituted a hazard and whether her injury resulted from defendants' failure

to keep the sidewalk free from the alleged accumulation of leaves.

The trial court erred in granting defendants' motion for a directed verdict.

Reversed and remanded.

**RICHARDSON, C. J.,** dissenting.

Plaintiff and, to some extent, defendants characterize the issue as whether defendants "were negligent *per se* because they violated a municipal ordinance" about public sidewalks. The majority concludes that, "[a]s a matter of law, an accumulation of leaves can be one of the 'other similar conditions' for which the ordinance imposes duties and liabilities on abutting landowners." 142 Or App at 131. The trial court erred, the majority holds, because "[p]laintiff was entitled to have the jury determine whether, on the facts presented in this case, the leaves on which she slipped constituted a hazard and whether her injury resulted from defendants' failure to keep the sidewalk free from the alleged accumulation of leaves." 142 Or App at 131-32. I disagree with both conclusions, and therefore dissent.

I agree with the majority that construction of municipal ordinances employs the same aids to interpretation that govern construction of statutes. I also accept that the primary tool of interpretation is examination of the text of the ordinance in some context. The majority does not suggest what the context of that examination is, unless perhaps the majority carries forward, as a context, an assumption that we are dealing with negligence *per se*. Part of the statutory context is not negligence *per se*, but a body of municipal law that has been developed by the Oregon Supreme Court.

In *Fitzwater v. Sunset Empire, Inc.*, 263 Or 276, 502 P2d 214 (1972), the court summarized the law:

"The law is well established in this state, as elsewhere, that the defendant owed no common law duty to pedestrians to keep the public sidewalk free of ice and snow. *Marsh v. McLaughlin et ux*, 210 Or 84, 309 P2d 188 (1957); *Rees v. Cobbs & Mitchell Co.*, 131 Or 665, 283 P 1115 (1930); 39 Am Jur 2d 918, Highways, Streets and Bridges § 517; 19

McQuillin (3d ed), Municipal Corporations § 54.42(b) at 104-05.

> "It is also uniformly held that an ordinance requiring the property owner to keep the sidewalk free of ice and snow and imposing a penalty for failure to do so does not impose civil liability on the property owner in favor of a third person. *Smith v. Meier & Frank Inv. Co.*, 87 Or 683, 171 P 555 (1918); *Rees v. Cobbs & Mitchell Co., supra*; Annot., 82 ALR2d 998, 999; 39 Am Jur 2d, *supra,* § 518 at 919; 19 McQuillin, *supra* at 106; 2 Restatement of Torts (Second) § 288, Comment *d*. Municipal ordinances requiring the removal of ice and snow upon a sidewalk are held to create a duty in favor of the city only. In effect, they merely require property owners to aid the city in the performance of its duty. *Marsh v. McLaughlin et ux, supra; Rees v. Cobbs & Mitchell, supra; Major v. Fraser*, 78 Nev 14, 368 P2d 369 (1962)." *Id*. at 279.

The court also held that:

> "An ordinance requiring removal of the ice and snow does not impose liability on the abutting owner to third persons injured as a result of his failure to remove the ice and snow." *Id*. at 283.

Whatever the duty of an abutting landowner to clear or repair the public sidewalk, it is a duty owed to the city, which has the primary responsibility to maintain the public sidewalk. If the duty is imposed by ordinance on the abutting landowner, failure to carry out that duty is not negligence as to a third party. Consequently, the concepts of duty, foreseeability and reasonable conduct are not germane to the analysis. The ordinance imposes liability without assignment of fault or, at least, only the minimal "fault" of "failure to so maintain the sidewalk."

Although the duty to maintain inures to the benefit of the city, the ordinance here specifically creates a cause of action for third parties for injuries arising from the landowner's failure to meet its duty to the city. The cause of action, however, is not for negligence. It is liability created by statute and particularly defined.

The body of case law I have described is part of the context in which we read the ordinance to determine the governing body's intent. The ordinance imposes liability contrary to the common law; consequently, we should strictly construe it so that the relatively strict liability the ordinance imposes is constrained within the legislative intent. Under that type of construction, where doubt exists as to the intention of the city, the language of the ordinance must be interpreted in favor of the landowner and against any implied extension of liability. *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 159, 364 P2d 627 (1961).

By ordinance, the city has absolved itself of liability for injury resulting from any accident on the public sidewalks "caused by ice, snow, encumbrances, obstructions, cracks, chipping, weeds, settling, holes covered by dirt, or other similar conditions." The ordinance, DCC 5.564(3), requires abutting property owners to maintain the sidewalks "free from such conditions." It also makes those property owners liable for injuries "to persons or property arising as a result of their failure to so maintain the sidewalks."

Liability is imposed on the abutting landowner for injuries due to "ice, snow, encumbrances, obstructions, cracks, chipping, weeds, settling, holes covered by dirt, *or other similar conditions.*" That list of conditions in subsection (3) must be read in the light of the other subsections of the ordinance which impose a specific responsibility on the abutting landowners respecting those same conditions. Subsection (1) places a duty on the landowners to remove snow and ice within a particular period of time. Consequently, the duty to maintain the sidewalk and the liability for failure to maintain it free from ice and snow is to alleviate the snow or icy condition within that time period. Liability for injury due to ice or snow, imposed in subsection (3), is for failure to do what is required by subsection (1).

Subsection (2) provides:

"No owner of property, improved or unimproved, abutting on a public sidewalk, shall permit the sidewalk to deteriorate to such a condition that, because of cracks, chipping, weeds, settling, covering by dirt, or other similar occurrences, the sidewalk becomes a hazard to persons using it."

Reading subsections (2) and (3) *in pari materia*, the specific listed conditions or occurrences are modified by the requirement that the landowner not "permit the sidewalk to deteriorate." Consequently, the conditions or occurrences are the result of deterioration, which denotes a much slower process than the transitory condition of debris that may blow or fall onto the sidewalk. It is a condition that results from deterioration and becomes a hazard that the landowner is required to alleviate and for which liability can be imposed.

As the majority notes, the city, by using the terms "other similar conditions," and "other similar occurrences," did not intend to limit the ordinance's reach to the conditions or occurrences specifically enumerated. The similarity of the unspecified conditions or occurrences must be to those listed in subsection (3), but those in turn must be analyzed in conjunction with the particular duty imposed on landowners by subsections (1) and (2). In other words, conditions similar to those described in subsection (2) must be those resulting from deterioration that are permitted to become a hazard. The transitory nature of leaves on a sidewalk is simply not a similar condition or occurrence. The trial court was correct in so concluding.

The majority seems to agree that similar conditions refer to conditions that have the same characteristics as those enumerated. But the majority approaches the similarity construct by beginning and ending with the final criterion of subsection (2)—that from the enumerated or similar conditions the sidewalk becomes hazardous. From this premise, the majority then says that "leaves can be slippery and can mask other dangers." 142 Or App at 131. In other words, leaves can be hazardous and thus constitute a similar condition. From this, the majority concludes that a leaf or leaves on a public sidewalk could be properly one of the "other similar conditions" for which the ordinance imposes duties and liabilities on abutting landowners.

The majority, however, leaves the final determination to the jury. It says:

"Plaintiff was entitled to have the jury determine whether, on the facts presented in this case, the leaves on which she slipped constituted a hazard and whether her injury

resulted from defendants' failure to keep the sidewalk free from the alleged accumulation of leaves." 142 Or App at 131-32.

Whether the ordinance imposes a duty on abutting landowners to remove leaves and imposes liability for injury from leaves is a matter of construction of the ordinance and is a matter of law for the court. The trial court correctly declined to submit the issue to the jury.

What the majority concludes about leaves and the ordinance could also be said about candy wrappers, newspapers or a wet stick. They all have the potential of becoming a hazard to pedestrians on a public sidewalk. If plaintiff had slipped on a newspaper or wet stick, the jury could be left with the job of determining if defendants were liable for failure to remove this hazard under the dictates of subsections (2) and (3).

The job the majority would tender to the jury becomes even more difficult because the majority also says that leaves can become one of the conditions specifically enumerated in the ordinance: an "encumbrance." It defines an encumbrance as something that impedes or hampers the natural or requisite function of pedestrian traffic. An encumbrance is, apparently, anything that would cause a pedestrian to slip or stumble or suffer injury in some fashion. I do not understand how a leaf or leaves, wet or dry, can be an encumbrance, even under the most liberal definition suggested by the majority.

The majority would thus leave the jury with at least two alternatives; determining whether the leaves on the sidewalk were a hazard, or whether they constituted an "encumbrance." Again, I do not understand how a jury could lawfully resolve either of those questions of law, even under the most creative instructions. Whether the ordinance is applicable to the facts that a jury could find is a matter for the court.

In summary, I conclude that the ordinance does not impose a duty on abutting landowners to remove leaves from the sidewalk or liability for failure to do so. The trial court was correct. Therefore, I dissent.